NO. 24-2054

---

IN THE

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

---

MADHUSUDAN KATTI, on behalf of himself and other similarly situated members of his class,

Plaintiff-Appellant,

v.

WARWICK A. ARDEN, in his individual and official capacity; MYRON FLOYD, in his individual and official capacity; STITH "TOM" GOWER, in his individual and official capacity; JEAN GOODWIN, in her individual capacity; KEN ZAGACKI, in his individual capacity,

Defendants-Appellees.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

---

PETITION FOR PANEL REHEARING AND REHEARING EN BANC

---

SUBMITTED BY:
Valerie L. Bateman
New South Law Firm
209 Lloyd St., Ste 350
Carrboro, NC 27510
919-810-3139
valerie@newsouthlawfirm.com

iv

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................ ii

TABLE OF AUTHORITIES ........................................................ iii

I.   STATEMENT OF PURPOSE ................................... 1

II.  INTRODUCTION ...................................................... 1

III. GROUNDS FOR PANEL REHEARING .................. 2

     A.   The Panel Misapplied Rule 12(b)(6) by
          Weighing Competing Factual Narratives and
          Improperly Crediting Defendants' Factual
          Allegations ....................................................... 2

     B.   The Panel Majority Misapplied This Court's
          Comparator Jurisprudence and Created an
          Impermissibly Heightened Comparator
          Standard ........................................................... 5

     C.   The Majority Opinion Misapprehended Conflict-of-
          interest Allegations as Unrelated to Discriminatory
          Intent ................................................................ 8

III. GROUNDS FOR REHEARING EN BANC ................. 9

     A.   The Panel Majority Decision Conflicts with
          Authoritative Decisions of this Court and

the Supreme Court (Rule 35(b)(1)(A)) ............. 9

B.    The Decision Presents a Question of
      Exceptional Importance: Application of Civil
      Rights Protections in Academic Tenure
      Decisions (Rule 35(B)(1)(B)) ........................... 10

C.    The Panel Opinion Conflicts with This Court's
      Treatment of Rehearing Standards and
      Institutional Concerns, as Reflected in *National
      Association of Immigration Judges v.
      Owen* ............................................................... 11

D.    Judge Heytens' Dissent Preserves Doctrinal
      Uniformity Without Opening Floodgates—
      The Majority's Opinion Does Neither. ............ 15

IV.   CONCLUSION ........................................................ 18

## TABLE OF AUTHORITIES

*Cases*                                                                  *Pages*

*Ashcroft v. Iqbal*, 556 U.S. 662                                          2, 3, 4, 7
  (2009)…………………………………………….……..

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544                             2, 3, 4, 6, 7
  (2007)……………………………….......................

*Walters v. McMahen*, 684 F.3d 435 (4th Cir.                               4
  2012)…………………………………………………

*McCleary-Evans v. Md Dep't of Transp.*, 780 F.3d 582                      4
  (4th Cir. 2015)……………………………………..

*Haynes v. Waste Connections,* 922 F.3d 219 (4th Cir.                      4, 5, 7
  2019)…………………………………………………

*Coleman v. Maryland Court of Appeals*, 626 F.3d 187                       5
  (4th Cir. 2010)……………………………………..

*Mawakana v. Board of Trustees*, 926 F.3d 859 (D.C.                        5, 7
  Cir. 2019)…………………………………………

*Merritt v. Old Dominion Freight Line*, 601 F.3d 289                       6, 7
  (4th Cir. 2010)……………………………………..

*Adams v. Trustees of the University of North Carolina-                    7
  Wilmington*, 640 F.3d 550 (4th Cir. 2011)………..

*National Association of Immigration Judges v. Owen*,     8, 9
    No. 23-2235 (4th Cir. Nov. 20, 2025)………………

## *Statutes*

42 U.S.C. § 1981……………………………………………..

Equal Protection Clause (U.S. Const. amend.          9
    XIV)………………………………………………….

Federal Rules of Appellate Procedure 35 and          2
    40………………………………………………………

## PETITION FOR PANEL REHEARING
## AND
## REHEARING EN BANC

## I.     STATEMENT OF PURPOSE

Pursuant to Federal Rules of Appellate Procedure 35 and 40, Appellant Madhusudan Katti respectfully petitions for panel rehearing and rehearing en banc of the Court's published decision issued on December 2, 2025 (DOC52 Opinion). Rehearing is warranted because the majority panel opinion misapprehends governing pleading standards, creates a heightened comparator requirement inconsistent with this Court's precedent, conflicts with Supreme Court authority, and raises an issue of exceptional importance regarding judicial review of tenure discrimination.

## II.     INTRODUCTION

The panel majority affirms dismissal of Appellant's race-discrimination claims by misapplying Rule 12(b)(6), imposing a heightened comparator requirement inconsistent with circuit precedent, and crediting defendants' factual explanations at the pleading stage. In doing so, the opinion conflicts with Supreme Court authority and this

1

Court's settled discrimination jurisprudence, while effectively creating a special pleading rule for academic tenure cases. These errors warrant panel rehearing and, independently, rehearing en banc because they threaten uniformity of circuit law and raise an issue of exceptional importance regarding the judicial review of tenure discrimination.

## III. GROUNDS FOR PANEL REHEARING

### A. The Panel Misapplied Rule 12(b)(6) by Weighing Competing Factual Narratives and Improperly Crediting Defendants' Factual Allegations.

A complaint survives a motion to dismiss when its factual allegations permit a reasonable inference of liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Plausibility does not require a plaintiff to negate all alternative explanations or plead facts sufficient to prevail on the merits.

The panel acknowledged this standard but did not apply it. Instead, the majority repeatedly credited defendants' asserted explanations—particularly criticisms of Appellant's teaching and mentorship—to conclude that the allegations "suggest nothing" about discriminatory intent. Slip Op. 13–15. That reasoning improperly resolves factual

disputes in defendants' favor and collapses Rule 12(b)(6) into a merits inquiry.

This Court has squarely rejected that approach. In *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012), the Court cautioned that requiring plaintiffs to forecast proof "turns Rule 12(b)(6) into a summary judgment device." And while *McCleary-Evans* affirmed dismissal on its facts, it reaffirmed that courts may not weigh competing inferences or credit an employer's asserted justification over a plaintiff's allegations. 780 F.3d at 588.

Here, Appellant alleged personal hostility, distorted evaluations, differential treatment of a similarly situated colleague, and direct participation by each defendant in the tenure decision. Taken together, those allegations plausibly support an inference of discrimination. The panel's contrary conclusion reflects a misapprehension of governing pleading standards requiring rehearing.

The majority's analysis repeatedly relies on Defendants' asserted justifications—particularly criticisms of Appellant's teaching and mentorship—to reject any inference of discrimination. Slip Op. 13–15

3

(DOC52 Opinion). In doing so, the panel treats Defendants' explanations as established facts rather than contested allegations.

This approach conflicts directly with *Twombly*, which instructs that courts must not dismiss a complaint based on a defendant's version of disputed facts. 550 U.S. at 555. Where a plaintiff alleges that an employer's stated reasons are false, exaggerated, or selectively applied, courts must accept those allegations as true at the pleading stage and allow discovery to proceed. *Id.*

This Court's decision in *Merritt v. Old Dominion Freight Line*, 601 F.3d 289 (4th Cir. 2010), underscores the point. There, the Court cautioned that "an employer's asserted justification" should not be credited where the plaintiff has plausibly alleged that the justification is pretextual. *Id.* at 298–99. Although *Merritt* arose at summary judgment, its reasoning applies with even greater force at the pleading stage.

By crediting Defendants' criticisms as legitimate explanations and rejecting Appellant's allegations that those criticisms were distorted or false, the panel inverted Rule 12(b)(6)'s foundational principle. The majority repeatedly relies on Defendants' asserted justifications—*e.g.*,

criticisms of teaching quality and mentorship—to reject discriminatory intent. *E.g.*:

- "Goodwin and Gower's persistent criticisms … provide ample basis for their belief that his work was subpar." (Slip Op. 13–14).

- "[A]n obvious alternative explanation" is that Appellant was "not qualified." (Slip Op. 15).

These statements indicates the Court drew inferences in favor of Appellees, not Appellant, which resulted in the affirmation of the same erroneous reasoning by the District Court. But Rule 12(b)(6) forbids courts to credit defendants' explanations over plaintiffs' factual allegations. *Twombly*, 550 U.S. at 555. Conflicting factual narratives cannot be resolved at the pleading stage. The majority's reliance on Defendants' version of events—over allegations that these "criticisms" were false, distorted, and selectively applied—is a clear misapplication of procedural law.

B.  <u>The panel majority misapplied this Court's comparator jurisprudence and created an impermissibly heightened comparator standard</u>

5

Judge Heytens' dissent correctly identifies that the majority opinion adopts a comparator standard inconsistent with established Circuit law. A plaintiff need not show that a comparator is identical, only that they are "similar in all relevant respects." *Haynes v. Waste Connections,* 922 F.3d 219, 223 (4th Cir. 2019).

In *Haynes*, this Court reversed *summary judgment* for the employer, explaining that "exact similarity is not required" and that courts err when they "credit the employer's explanation" for differences between employees instead of focusing on whether the alleged comparator is plausibly similar for purposes of discrimination analysis. *Id.* at 223–25. Importantly, the Court emphasized that comparator analysis should not become a vehicle for prematurely resolving factual disputes that belong to discovery or trial. *Id.* The procedural context of this case on a motion to dismiss, not summary judgment, makes this error even more profound.

Likewise, in *Coleman v. Maryland Court of Appeals,* this Court held that allegations comparing two employees' productivity and outcomes were sufficient at the pleading stage, even where the employer asserted other qualitative distinctions. 626 F.3d 187, 191 (4th Cir. 2010). The

Court explained that comparator allegations need only "establish a plausible basis" for similarity, not conclusively prove equivalence. Id.

The panel opinion departs sharply from these holdings. Rather than asking whether Appellant plausibly alleged similarity in relevant respects, the majority demanded proof-level detail—effectively requiring Appellant to plead that every qualitative distinction advanced by defendants was invalid. Slip Op. 11–13. That approach is irreconcilable with Haynes, which rejects "exact similarity," and Coleman, which holds that comparator allegations need only establish a plausible basis for similarity at the pleading stage. 922 F.3d at 223–25; 626 F.3d at 191. The dissent correctly applies that settled framework. Moreover, this approach conflicts with the approach taken in other circuits. *See, e.g., Mawakana v. Board of Trustees*, 926 F.3d 859, 865 (D.C. Cir. 2019) (rejecting heightened comparator standard in tenure cases).

The dissent correctly applied that settled framework and recognized that Appellant's allegations regarding Professor Jason Delborne satisfy the governing standard. Appellant alleged that he and Delborne were hired into the same department, evaluated by the same leadership, held similar roles, and possessed comparable professional

7

credentials, were of different races, and yet were treated differently with respect to tenure. DOC52 Opinion at 19–22 (Heytens, J., dissenting). Under binding precedent, those allegations are sufficient to survive a motion to dismiss.

C.   <u>The Majority Opinion Misapprehended Conflict-of-interest Allegations as Unrelated to Discriminatory Intent.</u>

The complaint alleged that Goodwin's expressed hostility, derogatory statements, and targeted exclusion created an actual or apparent conflict of interest, requiring recusal under university policy. The majority holds that no conflict existed because Goodwin's criticisms related to scholarship (Slip Op. 14–15). The panel misapprehended Appellant's argument: the issue was not Goodwin's academic judgment but her personal animus, which she expressed in non-academic contexts, including social-media exclusion and repeated disparagement. Conflicts arising from personal hostility, bias, or prior disputes are routinely recognized as relevant to discriminatory intent. *Merritt v. Old Dominion Freight Line*, 601 F.3d 289, 298–99 (4th Cir. 2010). Rehearing is necessary to correct this misinterpretation.

III. GROUNDS FOR REHEARING EN BANC (Rule 35)

Rehearing en banc is appropriate for two independent reasons.

A.  The Panel Majority Decision Conflicts with Authoritative
Decisions of this Court and the Supreme Court (Rule
35(b)(1)(A))

The majority opinion conflicts with precedent governing
comparator standards, pleading sufficiency, and judicial treatment of
employer explanations at the Rule 12 stage As summarized above, the
decision conflicts with

- *Iqbal*, *Twombly* — ignoring plausibility and improperly
  weighing competing factual inferences;

- *Haynes, Coleman, Walters* — imposing heightened
  comparator standards and crediting employer explanations;
  and

- *Merritt* — misapplying conflict-of-interest principles.

This degree of doctrinal conflict warrants en banc review.

Another reason for en banc review is because this Court has already
rejected the notion that academic freedom creates a heightened barrier
to civil-rights enforcement. In *Adams v. Trustees of the University of
North Carolina-Wilmington*, the Court held that while universities

9

possess academic discretion, that discretion does not insulate them from constitutional scrutiny or discrimination claims. 640 F.3d 550, 557 (4th Cir. 2011). The panel opinion's reliance on academic freedom to justify heightened pleading requirements conflicts with *Adams* and risks creating a *de facto* exception to civil-rights statutes.

B.     <u>The Decision Presents a Question of Exceptional Importance: Application of Civil Rights Protections in Academic Tenure Decisions (Rule 35(B)(1)(B))</u>

The panel majority expressly grounds its analysis in concerns about academic freedom, warning of "tenure inflation," "judicial intrusion," and the risk that "scholarship cannot flourish." (Slip Op. 9–10, 15, 17). These concerns led the panel to raise the bar for discrimination pleadings far above that applied in any other employment context. This effectively creates:

- a special judicial deference category unique to academia;

- a heightened pleading standard for civil-rights plaintiffs in universities; and

- a potential circuit split with courts rejecting similar approaches (e.g., *Mawakana*, D.C. Cir.).

10

The implications are vast: faculty facing discrimination may be unable to reach discovery, no matter how explicit the evidence of unequal treatment. Because universities are among the nation's largest employers and tenure is one of the most consequential employment decisions in public institutions, the question is unquestionably one of exceptional importance.

C.    The Panel Opinion Conflicts with This Court's Treatment of Rehearing Standards and Institutional Concerns, as Reflected in *National Association of Immigration Judges v. Owen*

The Court's recent published order and opinions denying rehearing en banc in *National Association of Immigration Judges v. Owen,* No. 23-2235 (4th Cir. Nov. 20, 2025), underscore why rehearing is warranted here and illustrate the errors in the panel majority's reasoning. This Court's recent rehearing decision in *Owen* underscores the need for en banc review when a panel opinion departs from settled doctrine based on institutional or policy concerns. As judges observed there, courts exceed their role when policy anxieties distort threshold legal standards. The panel opinion here does exactly that—raising pleading and comparator

requirements for academic cases alone, untethered from Supreme Court or circuit precedent.

First, multiple judges in *Owen* emphasized that courts must faithfully apply controlling precedent rather than modify legal standards based on perceived systemic or policy concerns. Judge Quattlebaum's dissent from the denial of rehearing en banc warned against courts "reimagin[ing] congressional intent" or creating new doctrinal tests untethered from Supreme Court authority, cautioning that such judicial innovation threatens separation-of-powers principles and doctrinal stability. That warning applies with equal force here. The panel majority's opinion does not merely apply Rule 12(b)(6); it reshapes pleading doctrine by imposing a heightened comparator requirement and by crediting defendants' explanations at the pleading stage—moves that are inconsistent with *Twombly*, *Iqbal*, and this Court's own precedents. As in *Owen*, the problem is not simply disagreement with outcomes, but the creation of new doctrinal barriers unsupported by controlling law.

Second, the *Owen* opinions reflect deep concern about courts allowing institutional or policy fears to distort legal analysis. In Owen, the panel's reliance on whether a statutory scheme was "functioning as

Congress intended" prompted sharp criticism for inviting courts to weigh political developments and policy judgments rather than apply settled jurisdictional rules. Here, the panel majority similarly grounds its analysis in concerns about academic freedom, tenure inflation, and judicial intrusion into university decision-making. Those concerns, while rhetorically powerful, are not part of the Rule 12(b)(6) inquiry. As *Owen* illustrates, appellate courts exceed their proper role when they allow broad institutional anxieties to justify departures from established legal standards.

Third, *Owen* reinforces the exceptional importance of maintaining clear, predictable doctrinal rules at threshold stages of litigation. Several opinions stressed that departures from settled standards—especially when undertaken without party presentation or clear precedent—risk widespread downstream consequences. The same is true here. By raising the pleading bar uniquely for academic tenure discrimination cases, the panel opinion creates uncertainty about whether civil-rights plaintiffs in academic settings can ever reach discovery, even when they plausibly allege unequal treatment and discriminatory animus. As the dissent in this case explains, that approach conflicts with binding comparator and

pleading precedent and threatens to insulate an entire category of employment decisions from meaningful judicial review.

Finally, *Owen* demonstrates that rehearing en banc is particularly appropriate when a panel opinion introduces doctrinal innovation with broad systemic consequences. Judges dissenting in *Owen* emphasized that when a panel decision conflicts with Supreme Court authority or reshapes legal doctrine in a way that affects future cases, en banc review serves its core function of maintaining uniformity and fidelity to precedent. That rationale applies here. The panel opinion's treatment of pleading standards, comparator evidence, and employer justifications departs from established Fourth Circuit law and risks becoming a template for dismissal of academic discrimination claims at the outset.

In short, *National Association of Immigration Judges v. Owen* provides a contemporaneous illustration of the very dangers present in this case: judicial departure from settled doctrine, driven by institutional concerns, with far-reaching consequences. Those considerations reinforce—not undermine—the need for panel rehearing or rehearing en banc to restore adherence to governing pleading standards and comparator jurisprudence.

14

D.  Judge Heytens' Dissent Preserves Doctrinal Uniformity
    Without Opening Floodgates—The Majority's Opinion Does
    Neither.

Judge Heytens' dissent identifies a narrow but critical doctrinal error in the panel majority's opinion—one that directly implicates this Court's institutional role. Properly understood, the dissent does not invite expanded judicial intrusion into academic decision-making; it restores settled pleading rules that apply uniformly across employment-discrimination cases. The majority opinion, by contrast, destabilizes circuit law while purporting to prevent hypothetical floodgates.

1. **This Case Is About Doctrinal Uniformity, Not Expanding Liability.**

Judge Heytens' dissent offers a more restrained position that the majority's opinion which will increase uncertainty and allow more water through the floodgates. It does not lower pleading standards, relax causation requirements, or diminish deference at later stages. It simply enforces what *Twombly* and *Iqbal* already require: acceptance of well-pleaded facts and reasonable inferences in the plaintiff's favor at Rule 12(b)(6). The dissent thus preserves the traditional sequencing of litigation—screening at summary judgment, not at the pleading stage—while the majority collapses those stages.

15

## 2. The Majority's Approach Creates, Rather Than Prevents, Systemic Risk.

The majority justifies its analysis by invoking academic freedom and concern about judicial second-guessing of tenure decisions. But Judge Heytens correctly explains that those policy concerns are already accommodated by existing doctrine: rigorous proof requirements at summary judgment, heightened evidentiary scrutiny for pretext, and deference to academic judgment where supported by record evidence. By importing those concerns into Rule 12(b)(6), the majority creates a novel, context-specific pleading standard that applies only to academia. That move fractures circuit uniformity and invites future litigation over when other institutional contexts merit similar carveouts.

## 3. Comparator Doctrine: Containment Versus Expansion.

Judge Heytens applies—not enlarges—this Court's settled comparator framework. Binding precedent requires plausibly similar comparators, not identical ones. *Haynes,* 922 F.3d at 223–25; *Coleman,* 626 F.3d at 191. The dissent's approach cabins claims to those plausibly alleging unequal treatment by similarly situated actors, while the

majority's proof-level demands effectively rewrite comparator doctrine for a single employment sector.

### 4. Floodgates Are Controlled by Existing Tools—Not by Heightened Pleading.

Judge Heytens' dissent leaves intact every doctrinal mechanism that historically limits unmeritorious claims: summary judgment, qualified immunity where applicable, and evidentiary burdens of proof. What it rejects—and what Fourth Circuit precedent rejects—is the use of Rule 12(b)(6) as a gatekeeping substitute for merits adjudication. *See Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). The majority's approach may appear restrictive, but it does so at the cost of doctrinal coherence.

### 5. Why Rehearing Is the Narrow, Institutionally Restrained Choice.

Granting rehearing does not signal hostility to academic freedom or open the door to routine tenure litigation. It restores doctrinal consistency, aligns this case with *Haynes*, *Coleman*, *Walters*, and *Merritt*, and confirms that policy concerns belong at later stages of litigation, if anywhere. Judge Heytens' dissent reflects that restrained approach. The majority opinion does not. In sum, judicial concerns about both floodgates

17

and fidelity to precedent can look to Judge Heytens' dissent to provides a narrower, more institutionally conservative path. Rehearing is necessary to preserve uniform pleading standards across the Circuit without expanding substantive liability or judicial overreach.

## IV. CONCLUSION

For the foregoing reasons, Appellant respectfully requests that the Court grant panel rehearing and rehearing en banc and vacate the panel opinion and reinstate of Appellant's § 1981 and Equal Protection claims, consistent with the dissent's reasoning.

Dated:  December 17, 2025

/S/ VALERIE L. BATEMAN
Valerie L. Bateman
NEW SOUTH LAW FIRM
209 Lloyd St., Ste 350
Carrboro, NC  27510
919-810-3139
valerie@newsouthlawfirm.com

18

## CERTIFICATE OF FILING AND SERVICE

I hereby certify the foregoing **PETITION** filed with the Circuit Clerk of the United States Court of Appeals for the Fourth Circuit, through the appellate CM/ECF system, will be served electronically to the registered participants via the Notice of Docket Activity.

Dated: December 17, 2025

/S/ VALERIE L. BATEMAN
Valerie L. Bateman
NC State Bar: 13417
NEW SOUTH LAW FIRM
209 Lloyd St., Ste 350
Carrboro, NC 27510
valerie@newsouthlawfirm.com
T: 919-810-3139
F: 919-823-6383